UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ADE BROWN, # 884273,                )
                                    )
                    Plaintiff,      )
                                    )        Case No. 1:16-cv-1117
v.                                  )
                                    )        Honorable Gordon J. Quist
JESSICA PERRY, et al.,              )
                                    )
                    Defendants.     )
_____   )

## **REPORT AND RECOMMENDATION**

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint concerns the mental health care that he received at the Bellamy Creek Correctional Facility (IBC) immediately before and after his February 20, 2016, assault of Sergeant John Nicewicz, which resulted in a new criminal conviction and an extension of plaintiff's incarceration. Plaintiff named seven mental health care providers at IBC as defendants: Christopher Ostrander, Jessica Perry, James Kissinger, Charlene Haraburda, Margaret Hickey, Marilynn Brown, and Carla Monestere. Plaintiff alleges that the defendants were deliberately indifferent to his serious psychological needs in violation of his Eighth Amendment rights.

The matter is before the Court on cross-motions for summary judgment. (ECF No. 87, 90). For the reasons set forth herein, I recommend that the Court dismiss plaintiff's claims for damages against defendants in their official capacities with

prejudice, because they are barred by Eleventh Amendment immunity.  I recommend that the Court deny plaintiff's motion for summary judgment (ECF No. 87), and that the Court grant defendants' motion for summary judgment (ECF No. 90) and enter a judgment in defendants' favor on all plaintiff's claims.

## Summary Judgment

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits.  *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Group*, 415 F.3d 487, 493 (6th Cir. 2005).  " '[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate.' "  *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005) (quoting *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004)).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. *See Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see AES-Apex Employer Servs., Inc. v. Rotondo*, 924 F.3d 857, 866 (6th Cir. 2019) ("[C]asting only [a] 'metaphysical doubt' is insufficient to survive summary judgment.") (quoting *Matsushita*, 475 U.S. at 586). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].' " *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252)); *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018).

-3-

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (citation and quotation omitted). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561; *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## **Qualified Immunity**

Defendants argue that they are entitled to summary judgment on the basis of qualified immunity. "Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.'" *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

"A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).  The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that defendant's conduct violated a constitutional or statutory right.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct.  *Id.*  Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage.  *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994).  The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated.  At the summary judgment stage, "the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which a jury could reasonably find for the plaintiff.' "  *Thompson v. City of Lebanon, Tenn.*, 831 F.3d 366, 370 (6th Cir. 2016).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of the particular conduct is clearly established.") (citation and quotation omitted); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted).  "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation and quotation omitted).  Qualified immunity is an immunity from suit rather than a mere defense to liability.  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201); *see City of Escondido, Calif. v. Emmons*, 139 S. Ct.

500, 503 (2019) (per curiam).  Moreover, courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. at 2023 (citations and quotations omitted); *see White v. Pauly*, 137 S. Ct. 548, 552 (2017).

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.' " *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Stevens-Rucker v. City of Columbus, Ohio*, 739 F. App'x 834, 839 (6th Cir. 2018) ("Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity.").  The burden applies to each claim.  *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

## Relevant Facts

Plaintiff was an inmate held in the custody of the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) during the period at issue:  October 5, 2015, through March 2016.[1]  (Plf. Dep., 6, ECF No. 91-1, PageID.926).  The defendants were MDOC employees at IBC providing mental health care to prisoners.

---

[1] Plaintiff began his incarceration in December 2014.  (Plf. Dep., 5, 26, ECF No. 91-1, PageID.925, 931).  He had mental assessments performed before the period at issue, but he had no history of ongoing mental health treatment before his incarceration. He had a substance abuse problem.  (ECF No. 66-1, PageID.446-49, 451).

On  October  5,  2015,  Debessay  Habtemariam,  R.N.,  conducted  a  behavioral health  segregation  visit.   Plaintiff  related  that  he  was  "fine"  and  that  he  was  not  in any  discomfort  or  distress.    Nurse  Habtemariam  provided  him  with  instructions regarding  relaxation  techniques  and  provided  him  with  puzzles.   He  did  not  appear to  be  experiencing  emotional  distress  and  he  denied  suicidal  or  homicidal  ideation. (ECF No. 87-1, PageID.785; Plf. Dep., 12-15, PageID.927-28).

October 6, 2015, Laura Woodford, M.S.W., noted that plaintiff had been placed in observation status after he had threatened self-harm.  Plaintiff related that he was unhappy  about  being  in  segregation,  but  he  denied  writing  the  kite  (informal complaint)  threatening  self-harm.   Plaintiff  denied  having  any  thoughts,  intent,  or plan to kill himself.  Ms. Woodford rated plaintiff as a low suicide risk.  (ECF No. 87-1, PageID.786; Plf. Dep., 16-17, PageID.928).

On October 8, 2015, plaintiff remained on suicide observation.  Dana Butler, M.A., performed an evaluation and she found no evidence of a serious mental health illness,  including  a  thought  or  mood  disorder. Plaintiff  denied  experiencing  any auditory or visual hallucinations.  Plaintiff was rated as a low risk of self-harm.  Ms. Butler  found  that  there  was  no  need  for  a  psychiatric  referral.   (ECF  No.  87-1, PageID.787-88; Plf. Dep., 17-18, PageID.928-29).

On October 20, 2015, plaintiff received an individual therapy session with Psychologist Marilynn Brown.  Plaintiff did not express homicidal or suicidal ideation.   The  clinical  assessment  of  plaintiff's  condition  was  adult  anti-social behavior.  Plaintiff reported that he was hearing voices, felt depressed, and had

anxiety.  He stated that at some point in the past he had been diagnosed with schizophrenia and bi-polar depression.  He was able to answer all the questions posed during the interview, and he did not show any signs or symptoms of mental illness.  Plaintiff demanded outpatient mental health treatment (OPT)[2] and medication for mood swings and depression.  He demanded a transfer to a different prison, and he threatened to "throw shit" in Ms. Brown's face.  Plaintiff's threat resulted in termination of this interview.  Psychologist Brown found that plaintiff did not require any further psychological intervention at that time.  (ECF No. 87-1, PageID.724, 789).  Plaintiff disagrees with her assessment.  (Plf. Dep., 40-42, 81, PageID.934-35, 944).

Psychologist Brown conducted another evaluation on November 5, 2015.  She determined that plaintiff did not require any further psychological intervention.  (ECF No. 87-1, PageID.724; Plf. Dep., 41-45, PageID.934-35).

Plaintiff testified that he had a meeting with Psychologist Carla Monestere, the "unit chief."[3]  She indicated that she would rely on the assessments of her professional colleagues rather than plaintiff's self-assessments.  (Plf. Dep., 82-83, PageID.945).

On November 18, 2015, Nurse Habtemariam conducted a behavioral health segregation visit.  She noted that plaintiff was smiling and in a good mood.  He did not indicate that he was in distress or experiencing mental health issues.  Plaintiff

---

[2] *See Dothard v. Elsen*, No. 1:14-cv-1152, 2016 WL 806109, at *3 (W.D. Mich. Feb. 8, 2016) (OPT is an acronym for "outpatient mental health treatment.").

[3] Plaintiff states that he saw Psychologist Monestere "around 11-9-15 (*see* exhibit B)." (Plf. Brief, 9, ECF No. 87, PageID.712).  I am unable to locate any document related to a November 9, 2015, meeting in the referenced exhibit.

did not express any suicidal ideation.  (ECF No. 87-1, PageID.794; Plf. Dep., 46-47, PageID.936).    Nurse  Habtemariam  conducted  another  interview  on November 20, 2015.  Plaintiff was alert and oriented.  He did not voice any mental health concerns.  (ECF No. 87-1, PageID.795).

On  November 23, 2015,  Christopher  Ostrander,  M.S.W.,  conducted  a behavioral segregation visit.  Plaintiff denied any current suicidal thoughts, feelings, or intent.  Mr. Ostrander rated plaintiff as a low suicide risk, and he found no need for special psychological intervention.  (ECF No. 87-1, PageID.796-97; Plf. Dep., 49-50, PageID.936-37).

On November 29, 2015, plaintiff called out to Nurse Habtemariam as she was passing by his cell door.  Plaintiff related that he had received three misconduct tickets "for holding on his food slot."  (ECF No. 87-1, PageID.798).  He wanted Vicodin and Xanax.  Plaintiff testified that he did not have a history of prescriptions for either drug.  He purchased them off the street.  Nurse Habtemariam found as follows: "Other than behavior issues, inmate does not have any mental health issues at this time."  (ECF No. 87-1, PageID.798; Plf. Dep., 50-51, PageID.937).

On  December 1, 2,  and  4, 2015,  Margaret  Hickey,  M.A.,  L.L.P.,  evaluated plaintiff.  Plaintiff denied having any suicidal thought, plan, or intent.  (ECF No. 87-1, PageID.728, 799-804; Plf. Dep., 54-61, PageID.938-39).  Plaintiff complained about being in segregation, "but continu[ed] to behave in problematic and self-defeating ways."  (ECF No. 87-1, PageID.804).

On January 3, 2016, plaintiff reported that he had taken an overdose of pills, and suicide precautions were implemented. (ECF No. 87-1, PageID.731-32; Plf. Dep. 61-62, 83-84, PageID.939-40, 945). On January 6, 2016, Psychologist Perry noted that plaintiff remained in an observation cell. When plaintiff asked to see a psychiatrist, Psychologist Perry responded that she did not see any reason to make such a referral. She confronted plaintiff with the fact that she did not think that he really wanted to hurt himself and that he was using observation status for secondary gain. She found that plaintiff's thoughts were clear, organized, and goal directed. She observed no signs of mental illness. (ECF No. 87-1, PageID.809). On January 7, 2016, Psychologist Perry noted that plaintiff had his arm through the food slot holding his "food slot hostage" in violation of prison rules. (*Id.* at PageID.810). Plaintiff's thoughts were clear, organized, and goal-directed and he appeared to be using his observation status for secondary gain. As a precaution, plaintiff was monitored as a moderate suicide risk. (*Id.*).

On January 8, 2016, Psychologist Perry noted plaintiff's history of being evaluated by multiple clinicians and that the evaluations consistently pointed out that plaintiff's mental health condition did not warrant a referral to OPT. His "behavioral issues" had resulted in his being housed in segregation and an extended period of loss of privileges. (*Id.* at PageID.813). On January 11, 2016, James Kissinger, M.A., referred plaintiff to a psychologist for an evaluation of his suicide risk level. (*Id.* at PageID.739-40, 817). Later that day, Psychologist Perry performed the evaluation. She noted plaintiff's history of exposing himself and using "very

-11-

sexually aggressive language" while he was on observation status.   (*Id.* at PageID.817).  Plaintiff did not "present as being mentally ill or genuinely suicidal." (*Id.*).  Plaintiff's risk of self-harm was rated as intermediate.  (*Id.*).

On January 26, 2016, Psychologist Perry performed an evaluation of plaintiff's suicide risk.  Plaintiff demanded medications and OPT.  He made sexually inappropriate comments towards Psychologist Perry.  There were no signs or symptoms of mental illness.  Plaintiff denied any thoughts of self-harm and he was rated as a low suicide risk. (ECF No. 87-2, PageID.822; Plf. Dep., 69-70, PageID.941-42).

On February 17, 2016, Mr. Ostrander performed plaintiff's segregation evaluation.  Plaintiff indicated that he was doing well and did not want to participate in the evaluation.  He denied any suicidal thought, feeling or intent.  He was rated as a low suicide risk.  (ECF No. 87-2, PageID.830).  Plaintiff testified at his deposition that he was "fed up with these psychs," and that he "didn't even want to talk to them anymore."  (Plf. Dep., 73, PageID.942).

On February 20, 2016, plaintiff assaulted Sergeant Nicewicz.  Plaintiff was charged with the crime of assaulting a prison employee.  Plaintiff testified:  "I wound up throwing feces on this officer, I wound up getting charged for it also."  (Plf. Dep., 74, PageID.943).  "I got a whole new case put on me based off of my mental illness." (*Id.* at 84, PageID.945).  "I was given five years, a whole new sentence, a whole new case."  (*Id.* at 92, PageID.947).

On March 7, 2016, Charlene Haraburda, M.A., L.L.P., performed a psychological evaluation. Plaintiff related that in the outside world he used marijuana and Xanax when he felt anxiety. He also reported that he had a history of being diagnosed as bipolar and psychotic. He stated that he heard a God-like voice commanding him to do negative things. He also stated that he sees dead people and that they talk to him. Plaintiff's thought processes were logical, and his impulse control was poor. (ECF No. 87-1, PageID.735; ECF No. 87-2, PageID.834-37; Plf. Dep., 73, 77, PageID.943). On March 8, 2016, when Psychologist Haraburda asked plaintiff why he did not learn from his mistakes, plaintiff's response was that he did not throw a liquid substance on someone. Psychologist Haraburda noted that plaintiff was able to understand, and that plaintiff agreed to refrain from harmful action. (ECF No. 87-2, PageID.835).

On March 14, 2016, Psychologist Haraburda noted that when plaintiff was confronted with his history of being terminated from numerous programs designed to help him with rehabilitation, plaintiff stated that the terminations were "not his fault[.]" (*Id.* at PageID.837). Psychologist Haraburda noted that plaintiff did "not appear to be qualified for OPT. He appear[ed] to need to be treated as a disruptive prisoner." (*Id.*). Plaintiff disagrees with Psychologist Haraburda's opinions. (Plf. Dep., 77, PageID.943). In fact, he disagrees with the professional assessments made by all defendants. (*Id.* at 94. PageID.948).

-13-

In March 2015, plaintiff was transferred to another prison. (*Id.* at 6, PageID.926).

On September 12, 2016, plaintiff filed this lawsuit. (ECF No. 1). On March 23, 2017, plaintiff received a psychological evaluation in connection with the criminal charge against him for assaulting Sergeant Nicewicz. (ECF No. 87-2, PageID.889-97). The psychologist offered his opinions that plaintiff was competent to stand trial, but he had a foundation for an insanity defense. (*Id.*). Plaintiff pleaded guilty in Ionia County Circuit Court to assaulting a prison employee. On February 6, 2018, the trial court judge sentenced plaintiff to sixteen months to five years' imprisonment on this criminal conviction.[4] (Plf. Dep., 6, PageID.926).

## Discussion

### I.    Eleventh Amendment Immunity

Plaintiff's claims for damages against defendants in their official capacities are barred by Eleventh Amendment immunity. The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan*

---

[4] *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=884273 (last visited July 9, 2019).

*Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012).  Furthermore, states and their departments are not "persons" within the meaning of 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.

## II.    Eighth Amendment

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *Estelle*, 429 U.S. at 104-05.  In judging the sufficiency of "deliberate indifference" claims, the Court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention.  *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard:  a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component).  501 U.S. at 298.  "The plaintiff must show both that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and that the official acted with a culpable enough state of mind, rising above gross negligence."  *Rhinehart v. Scutt*, 894 F.3d

721, 737 (6th Cir. 2018).  No reasonable trier of fact could find in plaintiff's favor on the subjective component of an Eighth Amendment claim against any defendant.

The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness.  An official "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]"  *Id.* at 837.  "A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful."  *Rhinehart v. Scutt*, 894 F.3d at 738.  The judgments of medical professionals are entitled to deference.  *Id.*  The subjective component presents "a high bar that a plaintiff must clear to prove an Eighth Amendment medical needs claim:  The doctor must have *consciously exposed* the patient to an *excessive risk* of *serious* harm."  *Id.*  (citation and quotation omitted).

The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.  The prison official's state of mind must evince deliberateness tantamount to intent to punish.  Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.  Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted).

"An inmate's disagreement with the testing and treatment he has received does not rise to the level of an Eighth Amendment violation.  Nor does a desire for additional or different treatment suffice to support an Eighth Amendment claim." *Rhinehart v. Scutt*, 894 F.3d at 740 (citations and quotations omitted).  "A disagreement with a course of medical treatment does not rise to the level of a federal constitutional claim under the Eighth Amendment." *Id.* at 744.  Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims that sound in state tort law. *Id.* at 753.

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious mental health.  The record shows that defendants displayed no deliberate indifference.  The claims that defendants "should have" provided him with "different" mental health care are, at best, state-law malpractice claims.

## III.   Qualified Immunity

Qualified immunity provides an additional basis for granting summary judgment in favor of defendants on plaintiff's claims for damages against defendants in their individual capacities.  Plaintiff has not presented evidence sufficient to satisfy the first prong of the qualified immunity analysis for the reasons stated in the section II.

The second prong of the qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau*,

543 U.S. at 198. It was plaintiff's burden to convince the Court that the law was clearly established in a "particularized sense" in 2015 and 2016 when each defendant acted. *See District of Columbia v. Wesby*, 138 S. Ct. at 589.

"To determine whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court,[5] then to decisions of [the Sixth Circuit] and other courts within our circuit, and finally to decisions of other circuits." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 898 (6th Cir. 2019) (citation and quotation omitted). The plaintiff must generally identify a case with a fact pattern similar enough to have given "fair and clear warning to officers" about what the law requires. *White v. Pauly*, 137 S. Ct. at 552. "The pre-existing law that makes a right clearly established comes primarily from the Supreme Court and the Sixth Circuit[.]" *Goode v. Berlanga*, 646 F. App'x 427, 430 (6th Cir. 2016) (citation and quotation omitted). In "rare" instances, the right can be clearly established by decisions from other circuits and district courts. S*ee Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 608 (6th Cir. 2005). The decisions must "point unmistakably to the unconstitutionality of the conduct and [be] so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Goode v. Berlanga*, 646 F. App'x at 430 (citation and quotation

---

[5] The Supreme Court recently noted that it has not yet determined whether the decision of any lower court can clearly establish the law for qualified immunity purposes. *See District of Columbia v. Wesby*, 138 S. Ct. at 591 n.8 ("We have not yet decided what precedents—other than our own—qualify as controlling authority for purposes of qualified immunity.").

omitted).   Existing precedent "must have placed the . . . constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. at 551.

Plaintiff invokes the Supreme Court's decision in *Estelle v. Gamble*, and he argues that it clearly established his rights.   (Plf. Brief, 2, 11, ECF No. 93, PageID.996, 1005).  This argument lacks merit because, under the second prong of the qualified immunity analysis, "the clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. at 503.  " 'The Court has repeatedly told [lower] courts . . . not to define clearly established rights at a high level of generality.' " *Id.* (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)).

The Supreme Court's decision in *Estelle v. Gamble* did not address any Eighth Amendment claim based on an inmate's mental health care immediately before and after he committed a criminal assault on a prison employee.   Plaintiff cannot challenge the fact or duration of his confinement in this lawsuit.  *See Heck v. Humphrey*, 512 U.S. 477, 486 (1994).

The three district court cases plaintiff cites, *Perez v, Oakland County*, 380 F. Supp. 2d 830, 841 (E.D. Mich. 2005); *Madrid v. Gomez*, 899 F. Supp. 1146, 1264 (N.D. Cal. 1995); and *Arnold v. Lewis*, 803 F. Supp. 246, 255 (D. Ariz. 1992) (Plf. Brief, 11, PageID.1005) did not clearly establish the rights that he claims each defendant violated.  The cases from outside Michigan do not involve analogous facts.  *Madrid* was a class action brought by inmates in the "SHU Unit" of California's maximum-security prison at Pelican Bay regarding conditions of their confinement.  899 F. Supp. at 1264.  *Arnold* was an action brought by a guardian *ad litem* on behalf of

H.B., an inmate with a long-established history of schizophrenia, chronic, paranoid type, including fourteen hospitalizations at the Arizona State Hospital, nine being on transfers from the department of corrections.  803 F. Supp. at 249.  "On numerous occasions," a psychiatrist recommended that H.B. be transferred to the state hospital for treatment, and those transfers were delayed or did not occur.  *Id.* at 251.

If anything, the Eastern District's decision in *Perez* supports defendants' claim of entitlement to qualified immunity.  Ariel Perez committed suicide inside the Oakland County jail.  Judge Gerald Rosen granted summary judgment in favor of the medical professional defendants, finding that the jail's psychologist was not deliberately indifferent to Mr. Perez's serious psychological needs and that the jail's caseworker was entitled to qualified immunity.  380 F. Supp. 2d at 840-47.

I find that plaintiff has not carried his burden of demonstrating that defendants' actions violated his clearly established Eighth Amendment rights.

## IV.  Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment (ECF No. 87) requires little discussion.  Defendants are entitled to judgment in their favor on all plaintiff's claims for the reasons stated herein.  Further, as the party with the burden of persuasion, plaintiff's evidence falls well short of being so powerful that no reasonable jury would be free to disbelieve it.  *See Arnett*, 281 F.3d at 561.  Plaintiff's motion for summary judgment should be denied.

## Recommended Disposition

For the reasons set forth herein, I recommend that the Court dismiss plaintiff's claims for damages against defendants in their official capacities with prejudice, because they are barred by Eleventh Amendment immunity. I recommend that the Court deny plaintiff's motion for summary judgment (ECF No. 87), and that the Court grant defendants' motion for summary judgment (ECF No. 90) and enter a judgment in defendants' favor on all plaintiff's claims.

Dated: July 30, 2019                    /s/  Phillip J. Green
                                        PHILLIP J. GREEN
                                        United States Magistrate Judge

## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a forfeiture of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Berksire v. Beauvais*, Nos. 17-1993/2039, __ F. 3d __, 2019 WL 2710236, at *6 (6th Cir. June 28, 2019); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).